RESTORATIVE SERVICES, INC., Plaintiff/Appellant,

v.

PROFESSIONAL CARE CENTERS, INC., Defendant/Respondent.

No. 56791.

Missouri Court of Appeals, Eastern District, Division Four.

June 5, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1990.

**142**

Allen David Allred, St. Louis, John Charles Hannegan, Lorna Louise Frahm, St. Charles, plaintiff/appellant.

Charles Alan Seigel, III, Clayton, for defendant/respondent.

CARL R. GAERTNER, Judge.

Appellant Restorative Services, Inc. (RSI), appeals the trial court's setting aside of a jury verdict in RSI's favor against Professional Care Centers, Inc. (PCC), on a breach of contract claim. We reverse and remand.

At all times relevant to this litigation, PCC owned and operated Comprehensive Outpatient Rehabilitation Facilities (CORFs), which allowed patients to receive a variety of needed therapy services in one location. In January, 1986, RSI contracted with PCC to provide physical, occupational, and speech therapy at specified CORFs. In return, PCC was to pay RSI at a rate set forth in the fee schedules in the contracts, which was based on the number of therapists provided.

In June, 1985, Thomas Cole, president and chief executive officer of RSI, became aware that PCC had not paid RSI for services rendered in May. Mr. Cole contacted Ray Lavender of PCC to discuss the situation, and was assured payment would be forthcoming in two weeks. On several occasions thereafter Mr. Cole met with principals of PCC to discuss the delinquency, and was consistently told the money was due and owing, and would be paid. Mr. Cole testified that Mr. Lavender and Mr. Plotkin, chairman of the board of PCC, were complimentary when commenting upon RSI's service.

RSI filed suit on April 23, 1986, against PCC for breach of contract, seeking damages of $77,198.08 due under the contracts, $3,890.41 as delinquency charges provided for in the contracts, $15,000 for expenses caused by failure to give timely notice of termination, reasonable attorney's fees as provided for under the contracts, and other relief. The chronological progression of the protracted pretrial discovery that next transpired is as follows:

7–21–86  Counsel for PCC enters appearance and requests time to answer until August 8, 1986, which is granted.

7–31–86  RSI serves its first set of interrogatories and first request for admissions.

8–8–86  PCC files a motion to dismiss RSI's petition.

8–13–86  PCC responds to RSI's petition, request for admissions, and generally objects to the interrogatories.

1–21–87  RSI files a request for production of documents asking for Medicare-related documents.

2–27–87  RSI moves for sanctions based on PCC's failure and/or refusal to produce the documents requested on 1–21–87.

4–3–87  RSI moves for sanctions based on PCC's failure and/or refusal to answer interrogatories served on 7–31–86.

4–13–87  After a hearing on RSI's motions, the Honorable Phillip J. Sweeney

orders PCC to produce the requested documents within fifteen days, instructs RSI to identify certain interrogatories to be answered with fifteen days, and denies sanctions.

4–13–87  RSI identifies interrogatories to be answered.

5–7–87  PCC states it will produce the requested documents, due on 4–28–87 by virtue of the 4–13–87 order, when they become available.

5–7–87  RSI moves to strike PCC's pleadings and moves for entry of judgment based on PCC's failure and/or refusal to produce requested documents and answer enumerated interrogatories.

5–27–87  PCC answers interrogatories by general objection, and specifically answers only four of the twenty-eight enumerated by RSI on 4–13–87.

5–28–87  RSI's motion heard and overruled by the Honorable Kenneth Weinstock. PCC must answer refiled interrogatories within ten days of service, and produce requested documents by 6–19–87 or have their pleadings stricken and default judgment entered against them.

6–3–87  PCC moves for reconsideration of the 5–28–87 order, asserting for the first time that the requested documents are not in their possession, custody or control.

6–9–87  Judge Weinstock denies PCC's motion and grants PCC five days to file a writ of prohibition.

6–15–87  PCC files a writ of prohibition with this Court.

6–17–87  PCC answers interrogatories refiled pursuant to the 5–28–87 order. Of the twenty-seven interrogatories, PCC persisted in objecting to thirteen.

6–23–87  RSI moves to compel responsive answers to its interrogatories, to strike PCC's pleadings and enter judgment for RSI, and for sanctions against PCC for its actions in regard to RSI's interrogatories.

6–23–87  This Court denies PCC's writ of prohibition.

6–24–87  PCC files a second motion to reconsider the discovery order on grounds the requested documents are not within their possession, custody or control and include in their motion Mr. Marvin Plotkin's affidavit stating such.

6–26–87  RSI moves for entry of default judgment against PCC and to allow RSI to prove damages.

7–1–87  PCC's motion of 6–24–87 and RSI's motion of 6–26–87 are heard by Judge Weinstock. PCC's motion is denied and RSI's motion to strike PCC's pleadings is sustained.

7–30–87  RSI moves for interlocutory entry of default judgment against PCC and assessment of damages.

8–7–87  Judge Weinstock grants RSI's motion for default judgment. PCC requests a jury trial on the issue of damages.

8–19–87  PCC moves to set aside the default judgment.

8–25–87  RSI moves to strike PCC's request for a jury trial.

10–16–87  Judge Weinstock grants PCC a jury trial on the damages issue.

The cause went to trial on March 29, 1989, before the Honorable Robert L. Campbell. RSI presented two witnesses at trial: Mr. Cole and Donald Franz, comptroller for RSI. Mr. Franz testified that the amount due under the contracts totalled $76,613.72; for delinquency charges due pursuant to the contract RSI was owed $37,868.33; and RSI had spent $46,337.08 on attorney's fees. He further testified that PCC had not given sixty day's notice of termination required in the contract, and because of that RSI expended $2,402.86 in salaries for employees of the CORFs. The jury awarded RSI $76,613.72 for amounts due, $37,868.33 in delinquency charges, and $46,337.08 in attorney's fees.

PCC moved for judgment notwithstanding the verdict or, in the alternative, a new trial. Judge Campbell thereafter entered the following order:

1) The attorney's fees awarded by the jury in the verdict are determined to be excessive and are reduced to $25,000;

2) The jury instructions submitted by plaintiff and given by the court are erroneous; but the court does not grant a new trial on this basis;

3) The judgment entered in this case is set aside and held for naught because of the court's improper striking of Defendant's pleadings[;]

4) Cause reinstated on civil jury docket. Defendant's pleadings are reinstated.

RSI appeals, asserting Judge Campbell erred in setting aside the judgment entered on the jury verdict, in setting aside the default judgment, in reinstating the defendant's pleadings, and in ordering the cause reinstated on the jury trial docket. RSI does not contend Judge Campbell exceeded his jurisdiction in vacating the orders of his colleague, but rather argues that he erred in doing so. The basis for Judge Campbell's order was his conclusion that the striking of defendant's pleadings was "improper". The order does not delineate what he considered the impropriety to be. However, the trial transcript does reflect his repeatedly expressed opinion that "Judge Weinstock is in err [sic] in his ruling" striking defendant's pleadings for failure to produce documents in the face of an affidavit that the documents are not in existence. Judge Campbell demonstrated by these utterances in the transcript and by his written conclusion that the striking of the pleadings was "improper" that he was ruling as a matter of law, not merely exercising discretion to supersede the earlier exercise of discretion by his colleague. We think Judge Campbell's ruling constituted an erroneous application of the law under all of the circumstances of this case.

■ Rule 61.01, sections (b) and (d) expressly authorize striking pleadings and the entry of judgment by default as permissible sanctions for failure to answer interrogatories or failure to produce documents. The legal file in this case reflects a history of PCC's continuous frustration of RSI's efforts to obtain discovery over a period in excess of twelve months. Interrogatories filed by RSI on July 31, 1986, remained unanswered on August 7, 1987, when the interlocutory order of default was entered. PCC never complied with RSI's request for the production of documents. Repeated motions for sanctions were filed by RSI and denied by the court on the basis of PCC's assurances that answers would be forthcoming. Judge Sweeney and Judge Weinstock showed patience and restraint for many months before finally ordering defendant's pleadings stricken. "The trial judge has an obligation to see that discovery rules are followed and to expedite litigation...." Giesler v. Giesler, 731 S.W.2d 33, 34 (Mo.App.1987), *quoting* Russo v. Webb, 674 S.W.2d 695, 698 (Mo. App.1984). Judge Weinstock was clearly acting within his discretion in concluding that PCC had displayed an approach to discovery which was dilatory and evasive and that the imposition of sanctions pursuant to Rule 61.01 was warranted.

■ It is apparent that Judge Campbell focused solely upon the affidavit of PCC's president and concluded that it was improper to impose sanctions for the failure to produce records not in the possession of PCC. Under some circumstances this may well be correct. *See Arth v. Director of Revenue,* 722 S.W.2d 606, 607 (Mo. banc 1987). That principle, however, under the facts of this case, does not render Judge Weinstock's imposition of sanctions erroneous. The failure to produce requested documents was not an isolated incident but was only a part of a continuous effort to evade all discovery. While an affidavit may be offered as evidence in support of a motion, as in the case of oral evidence the trial court can believe or disbelieve the statements made in such an affidavit. *Flegel v. Holmes,* 614 S.W.2d 779, 780 (Mo. App.1981); *Cloyd v. Cloyd,* 564 S.W.2d 337, 343 (Mo.App.1978). The legal file in this case, which includes allegations of assurances that answers to requested discovery would be forthcoming and copies of correspondence supporting those allegations, places in doubt the efficacy of the affidavit as a bar to the imposition of sanctions. Moreover, the carefully drafted affidavit speaks only to possession of certain specific documents on June 15, 1987, the

date of the affidavit. Those documents related to Medicare charges made by PCC, in part at least, for services rendered by RSI, and the record of payment of these charges. Such records obviously existed at one time. In fact, there is some evidence that RSI requested production of these documents at the time of PCC's assurances that RSI's charges would be paid in full after reimbursement was received from Medicare. The affidavit is silent regarding when or under what circumstances the records ceased to exist, nor does it suggest any undue hardship involved in recreating the substance thereof. We find no error in Judge Weinstock's disregard of the affidavit.

■ Furthermore, the effect of Judge Campbell's order was to set aside the interlocutory order of default. Rule 74.05(c) provides that such an order may be set aside only upon a showing of good cause, excluding conduct intentionally or recklessly designed to impede the judicial process, and upon a showing of facts constituting a meritorious defense. Judge Campbell made no finding of either of these prerequisites, and in fact, nothing in the record would support such a finding. We have already noted the record reflects a history of delay and evasion of discovery. PCC's motion to set aside the order of default does not even in a conclusory manner allege the existence of a meritorious defense, much less state facts constituting such a defense. Other than PCC's answer in the form of a general denial of the allegations of the petition, and in an allegation labeled as an affirmative defense, that plaintiff's petition fails to state a claim upon which relief can be granted, nothing in the legal file or in the transcript of the record suggests the existence of a defense to RSI's claim. PCC requested and received a jury trial on the issue of damages but produced no evidence whatsoever to refute RSI's evidence of the propriety and the accuracy of its charges for therapy services rendered pursuant to the contract. Judge Campbell's order setting aside the striking of defendant's pleadings and reinstating the case on the trial docket was in violation of Rule 74.05(c).

■ We also find erroneous Judge Campbell's arbitrary reduction of the amount awarded by the jury for attorney's fees. The evidence fully supported the amount of the verdict. PCC concedes this reduction in the amount of the verdict was erroneous but argues that, having found the amount of attorney's fees to be excessive, the court should have granted a new trial on this issue. Since the abolition of remittitur practice in *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99 (Mo. banc 1985) trial courts have been limited to two options: permitting the amount of a verdict to stand or granting a new trial. *Id.* at 110. Judge Campbell did not find the verdict to be the result of bias or misconduct, which would require a new trial. *Id.* at 108, n. 3. He found it to be excessive, i.e. against the weight of the evidence. While he could have granted a new trial on this ground, he apparently did not find the amount of the verdict "... glaringly unwarranted so as to shock the conscience of the court ..." thereby warranting such relief. *Breeding v. Dodson Trailer Repair, Inc.*, 679 S.W.2d 281, 286 (Mo. banc 1984). On the contrary, Judge Campbell substituted his judgment for that of the jury on an issue properly determined by the jury.

■ We need not address the comment in Judge Campbell's order that the instructions, although erroneous, did not warrant granting a new trial. RSI is not aggrieved by this comment. Whatever error Judge Campbell may have found in the instructions was apparently considered by him to be non-prejudicial. We also note that PCC, at the instruction conference, expressly reserved its right to make specific objections to instructions until its motion for new trial, but failed to make such objections in that motion. *See* Rule 70.03. For both reasons, the question of instructional error is not properly presented for appellate review.

The order setting aside the judgment, reinstating defendant's pleadings, reinstating the case on the trial docket, and reducing the amount awarded by the jury for

attorney's fees is reversed. The cause is remanded with directions to enter judgment in accordance with the verdict of the jury.

HAMILTON, P.J., and STEPHAN, J., concur.